## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| TORLI H. KRUA,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>MAURICIO L. MILLER; COMMUNITY<br>INDEPENDENCE INITIATIVE (CII),<br>CENTER FOR PEER-DRIVEN CHANGE,<br>MARIE ZERNOVOJ; FII/UPTOGETHER,<br>ROOT CHANGE INC.,<br><br>　　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 24-CV-10232-AK |

## MEMORANDUM AND ORDER ON MOTION TO DISMISS COUNTERCLAIM

**ANGEL KELLEY, D.J.**

Before the Court is Torli Krua's ("Rev. Krua") Motion to Dismiss Counterclaim pursuant to Fed. R. Civ. P. 12(b)(6). [Dkt. 48]. In their combined "Answer and Cross Complaint," Counterclaim-Plaintiffs Mauricio Miller ("Miller") and Community Independence Initiative ("CII") allege Rev. Krua defamed them. [Dkt 42]. Specifically, Miller and CII allege that Rev. Krua told the Imago Dei Foundation that Miller and CII stole his intellectual property. As a result of these purported statements, the Imago Dei Foundation declined to renew a grant to Miller and CII, resulting in economic losses.

For the following reasons, Rev. Krua's Motion to Dismiss the Counterclaim [Dkt. 48] is **GRANTED**.

1

I.      BACKGROUND

The following background facts are taken from Rev. Krua's Second Amended Complaint [Dkt. 38] and the Answer to Amended Complaint and Counterclaim [Dkt. 42] unless otherwise noted.  Rev. Krua is the founder of Citizens Independence Initiative-Liberia ("CII-Liberia"), which was founded in Buchanan, Liberia, in 2016. [Dkt. 38 at 4, 5].  CII-Liberia is a "grassroots community initiative focused on self-reliance and poverty reduction." [Id. at 3].  Miller is the leader of Family Independence Initiative/UpTogether ("FII"), a nonprofit founded in 2001 and based in Oakland, California. [Id.; Dkt. 42 at 8].  FII studies how low-income families may better plan their finances and assist one another. [Dkt. 42 at 8].  FII does this by collecting "monthly progress data" and paying families for their time in providing this information. [Id.].

In 2015, FII began recruiting "community participant[s]" in Roxbury, Massachusetts. [Dkt. 38 at 3, 5].  Among them was Rev. Krua, a Liberian refugee and a community leader. [Id.].  In 2016, Rev. Krua attended the 2016 Citizen University Annual National Conference in Seattle, Washington. [Id.].  There, he met Miller. [Id.].  Following their meeting, Rev. Krua invited Miller and FII leadership to visit CII-Liberia. [Id.].  Although Miller declined at the time, the two entered into an agreement. [Dkt. 38 at 6].  Under the agreement, Rev. Krua would promote Miller's book internationally and, in exchange, Miller would raise funds for CII-Liberia and provide it networking support. [Id.].  Subsequently, Rev. Krua "shared his confidential business plans, strategies, and data with FII and Miller" and promoted their materials, believing in good faith that he had a "mutual relationship." [Id. at 4].

Later, however, Rev. Krua discovered that FII and Miller had secretly published a report stating they founded the CII-Liberia project without mentioning Rev. Krua. [Id. at 7].  Instead of crediting him, FII attributed CII-Liberia's work to itself. [Dkt. 1 at 5].  Rev. Krua alleges that

2

Miller and FII secretly launched a parallel initiative named CII "using [his] concepts and materials." [Dkt. 38 at 6].  These materials included strategy documents, videos, and data from CII-Liberia. [Dkt. 1 at 5].  Rev. Krua contends that Miller, FII, and/or CII received donations, grants, and awards based on his work without crediting him and without his consent. [Id. at 4-7].  Additionally, Rev. Krua asserts that Miller, FII, and CII continue to use his intellectual property through other organizations, such as the Center for Peer-Driven Change and Root Change Inc., without crediting or compensating him. [Id.].

Rev. Krua filed his initial Complaint on January 29, 2024. [Dkt. 1].  Rev. Krua amended his Complaint on March 25, 2025. [Dkt. 19].  On June 3, 2025, Rev. Krua filed a Motion for Leave to File a Second Amended Complaint [Dkt. 30], which was granted on August 19, 2025. [Dkt. 37].  On the same day, Rev. Krua filed the Second Amended Complaint. [Dkt. 38].

On September 9, 2025, Miller and CII filed an "Answer and Cross-Complaint" against Rev. Krua. [Dkt. 42].  The Court reads the "Cross-Complaint," as a counterclaim. Fed. R. Civ. P. 13(a)(1)(A) ("A pleading must state as a counterclaim any claim that—at the time of its service—the pleader has against an opposing party if the claim . . . arises out of the transaction or occurrence that is the subject matter of the opposing party's claim.").  Thus, while titled "Cross-Complaint," the allegations are in fact counterclaims under Fed. R. Civ. P. 14.

Therein, Miller and CII ("Counterclaim-Plaintiffs") alleged that Rev. Krua ("Counterclaim-Defendant") made false and harmful statements about Miller and CII to the Imago Dei Foundation.  The Imago Dei Foundation previously provided a grant to Miller and CII in 2018 or 2019 for their international work. [Dkt. 42 at 9].  Miller and CII allege that when it came time to renew the grant, the Imago Dei Foundation declined to do so. [Id.].  This is because Rev. Krua allegedly told the Imago Dei Foundation that Miller and CII had stolen his intellectual

property. [Id.].  Thus, the Imago Dei Foundation informed Miller and CII that it would not renew the grant to avoid involvement in a potential dispute between them and Rev. Krua. [Id.].

Consequently, Miller and CII filed this counterclaim against Rev. Krua alleging he defamed them in telling the Imago Dei Foundation that Miller and CII had stolen Rev. Krua's intellectual property. [Id. at 9-10].  Miller and CII allege that Rev. Krua's statements caused them economic loss of more than $100,000. [Id. at 10].  On October 6, 2025, Rev. Krua filed an Amended Motion to Dismiss the Counterclaim. [Dkt. 48].  The Court now addresses that Motion.

## II.    LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must allege sufficient facts to state a claim for relief that is "plausible on its face" and actionable as a matter of law. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  Reading the complaint "as a whole," the court must conduct a two-step, context-specific inquiry. García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013).  First, the court must perform a close reading of the complaint to distinguish factual allegations from conclusory legal statements. Id.  Factual allegations must be accepted as true, while legal conclusions are not entitled to credit. Id.  A court may not disregard properly pleaded factual allegations even if actual proof of those facts is improbable. Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011).  Second, the court must determine whether the factual allegations present a "reasonable inference that the defendant is liable for the misconduct alleged." Haley v. City of Bos., 657 F.3d 39, 46 (1st Cir. 2011) (citation omitted).  Dismissal is appropriate when the complaint fails to allege a "plausible entitlement to relief." Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 95 (1st Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559 (2007)).  In considering a motion to dismiss a counterclaim, the court applies the

same standards as a motion to dismiss a complaint. Korngold v. DRB Sys., LLC, No. 1:22-CV-10864-AK, 2023 BL 215343, at *5 (D. Mass. June 23, 2023) (citing Lexington Luminance LLC v. Osram Sylvania Inc., 972 F. Supp. 2d 88, 91 (D. Mass. 2013)).

III.    DISCUSSION

Rev. Krua alleges that the counterclaim should be dismissed because remarks to the Imago Dei Foundation about Miller and CII are covered by the litigation privilege. The Court agrees.

The litigation privilege "precludes civil liability based on communications made by a party, witness, or attorney in connection with judicial proceedings or contemplated litigation." Bassichis v. Flores, 189 N.E.3d 640, 642 (Mass. 2022). Courts in the United States adopted the doctrine of litigation privilege in the nineteenth century. Id. at 646. The doctrine, which has broadened considerably over time, allows courts to operate effectively and smoothly and avoid pointless litigation. Id. at 648 (providing various policy justifications for litigation privilege). Massachusetts, like nearly all other states, has adopted the formulation of litigation privilege as set forth in the Restatement (Second) of Torts. Id.; Restatement (Second) of Torts § 587 (A.L.I. 1965).

Litigation privilege is applicable to statements made outside of the courtroom, including those made before a proposed judicial proceeding commences as long as they have "some relation to the litigation." Bassichis, 189 N.E.3d at 646 (internal citation omitted); see also Visnick v. Caulfield, 901 N.E.2d 1261, 1264, n.5 (Mass. App. Ct. 2009) (defining "judicial proceeding" as "all proceedings in which an officer or tribunal exercises judicial functions"). These statements may be written or oral, and include those "made by a party, witness, or attorney." Patriot Group, LLC v. Edmands, 136 N.E.3d 386, 392 (Mass. App. Ct. 2019). In the

context of defamation claims, litigation privilege applies even to statements made maliciously or in bad faith. Nnodim v. U.S. Bank Trust Ass'n as Trustee for LB-Igloo Series IV Trust, 703 F. Supp. 3d 296, 303 (D. Mass. 2023); Mezullo v. Maletz, 118 N.E.2d 356, 358 (Mass. 1954). Ultimately, however, "[t]he application of the privilege 'is determined on a case-by-case basis, after a fact-specific analysis.'" Riverdale Mills Corp. v. Cavatorta North America, Inc., 189 F. Supp. 3d 317, 321 (D. Mass. 2016) (quoting Mack v. Wells Fargo Bank, N.A., 41 N.E.3d 323, 327 (Mass. App. Ct. 2015)).

The litigation privilege applies so long as the statements were made prior to or during a judicial proceeding before a court, and they relate in some way to the underlying proceeding. Fisher v. Lint, 868 N.E.2d 161, 167 (Mass. App. Ct. 2007) ("The privilege extends to circumstances where the statements are made preliminary to a proposed or contemplated judicial proceeding as long as they bear some relation to the proceeding."); see Correllas v. Viveiros, 572 N.E.2d 7, 11 (Mass. 1991) (noting defendant's arguably defamatory statements about plaintiff made to a police officer prior to institution of proposed judicial proceeding were "absolutely privileged").

Here, the litigation privilege applies. Rev. Krua is a party to this litigation, and statements made by parties fall within the ambit of the litigation privilege. See Patriot Group, LLC, 136 N.E.3d at 388 (noting privilege applies to statements made by parties). Rev. Krua's statements to the Imago Dei Foundation are inextricably tied to the underlying lawsuit. Rev. Krua's underlying suit concerns the alleged theft of his intellectual property by Miller and CII. Rev. Krua's statements to the Imago Dei Foundation articulated his understanding of the case – namely, that Miller and CII stole his intellectual property. Once he made these statements to the Imago Dei Foundation, Miller and CII asserted a counterclaim against him, alleging the

statements were defamatory.  Rev. Krua's statements certainly bear more than "some" relation to the underlying judicial proceeding—they are the very subject of the underlying proceeding.  See Bassichis, 189 N.E.3d at 646.  And even assuming *arguendo* Rev. Krua's statements were made maliciously or in bad faith (which is not alleged), they are still protected by the litigation privilege.  See Nnodim, 703 F. Supp. 3d at 303.

Accordingly, the litigation privilege bars this claim against Rev. Krua.  Thus, the counterclaim is **DISMISSED**.

## IV.    CONCLUSION

As a final note, Rev. Krua also seeks document requests from Defendants in the funding proposals for CII-Liberia, and proposals submitted to the Imago Dei Foundation. [Dkt. 48 at 2]. The Court denies these requests as a motion to dismiss is not a vehicle for discovery.  Even so, "the vehicle for discovery is not a motion, but a request for production of documents under Fed. R. Civ. P. 34, which makes clear that such requests 'may [be] serve[d] on any other party' without Court involvement." Cooper v. Hagelberg, No. 4:20-CV-40035-TSH, 2022 WL 21758808, at *12 (D. Mass. Mar. 9, 2022).  Thus, Rev. Krua may seek these documents through discovery requests from Defendants.  For the foregoing reasons, Rev. Krua's Motion to Dismiss Counterclaim [Dkt. 48] is **GRANTED**.

**SO ORDERED**.

Dated: July 21, 2026

/s/ Angel Kelley
Hon. Angel Kelley
United States District Judge